**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED NATIONAL INSURANCE COMPANY,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 06-C-6216** |
| **v.** | ) | |
| | ) | **JUDGE DAVID H. COAR** |
| **FASTEEL, INC., REDFERN DESIGN, LTD., and VITO RECCHIA,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff United National Insurance Company ("Plaintiff," "UNIC," or "insurer") has brought suit against Defendants Fasteel, Inc. ("the Defendant," "Fasteel," or "insured"), Redfern Design, Ltd., and Vito Recchia (collectively, "Defendants") seeking declaratory judgment with respect to insurance coverage. Now before this court is Plaintiff's motion for summary judgment (Doc. No. 28), filed pursuant to Federal Rules of Civil Procedure 56. For the reasons stated below, Plaintiff's motion for summary judgment is DENIED.

**1. FACTS**

This case involves the status of an insurance policy and the coverage it offers for a personal injury lawsuit filed in Cook County, Illinois.

a. <u>Parties</u>

UNIC is an insurance company, organized under the laws of the Commonwealth of Pennsylvania, with its principal place of business in Bala Cynwyd, Pennsylvania. UNIC is a citizen of the Commonwealth of Pennsylvania.

Fasteel, Inc. ("Fasteel") is an Illinois corporation. Fasteel is and always has been a company engaged in the business of fabricating structural steel and the delivery of those steel products to construction projects. A majority of the construction projects consist of residential construction. Fasteel maintains its office at 607 W. Chicago Street in Plainfield, Illinois and a warehouse in New Lenox, Illinois where the steel is fabricated and from which deliveries are made to customers.

b.    Communications between the Parties

In October of 2005 Fasteel applied for general liability insurance with UNIC. As part of that application process, Fasteel President Vanessa Hernandez ("Hernandez") and her father Jafet Gonzales ("Gonzales") were interviewed and an inspection was conducted of the business. UNIC issued a commercial general liability policy to Fasteel, number L7187228, with limits of $1 million each occurrence and a general aggregate limit of $2 million ("the Policy"). *See* Pl.'s Facts Ex. 5; Gonzales Dep. at 20; *see also* Compl. Ex. C. That same month UNIC, though its representative and underwriting agency P.S. & Associates, issued a quote for insurance and Fasteel paid a premium of $8,970. *See* Okal Aff. Ex. C.

On October 28, 2005, a Binder was prepared by P.S. & Associates which referred to a "Residential Projects Exclusion" and further stated that the exclusion "requires insured's signature." *See* Def.'s Facts Resp. Ex. 2 ("Binder").

The Policy documents were delivered to Fasteel in a single 3-ring binder, though the parties dispute the manner and date of its delivery. *See* Def.'s Add'l Facts ¶ 11; Pl.'s Facts Reply ¶ 11. The Policy is made up of three documents or sets of documents: a form titled "Commercial General Liability Declarations," Pl.'s Facts Ex. 5 at 2 ("Declarations Form"); a "Commercial General Liability Coverage Form," *id.* at 3-19 ("Coverage Form"); and a set of endorsements, with schedule, *id.* at 1, 20-42. This last set of documents contains the two endorsements central to this dispute; one titled Endorsement EAA 148 "RESIDENTIAL PROJECTS EXCLUSION" ("EAA 148" or "Residential Projects Exclusion"), and the other Endorsement PSA 1023 "DESIGNATED OPERATIONS COVERAGE ONLY: NOTICE OF SPECIAL RESTRICTION OF COVERAGE ENDORSEMENT" ("PSA 1023" or "Designated Operations Endorsement").

On December 6, 2005 and December 8, 2005, P.S. & Associates issued an email noting that Fasteel needed to sign the Residential Projects Exclusion. On January 9, 2006 P.S. & Associates issued another email noting that "the insured would not sign the residential exclusion." The Policy was cancelled effective February 19, 2006, which was backdated to January 27, 2006, the same date that Fasteel, Inc. procured alternate insurance from another company.

c. <u>Contract Terms</u>[1]

---

[1]The filings of both parties are deficient under Local Rule 56.1. Factual responses are to include (1) "a response to each numbered paragraph in the [other] party's statement," which is to incorporate (2) "specific references to the affidavits, parts of the record, and other supporting materials relied upon." Local Rule 56.1(b)(3)(B). Fasteel's response fails in the first respect, because it makes no effort to explain the nature of the factual dispute, instead simply referring to facts as "disputed" without additional explanation. *See generally* Def.'s Facts Resp. This is not a satisfactory "response." Plaintiff's reply fails in that it does not contain a single citation to the

The Policy provides for an effective date of October 27, 2005.

The Declarations form is dated October 31, 2005. This document contains some information regarding the Policy's scope, in that it: lists the Policy's effective date as October 27, 2005; names Fasteel Industries as the insured, with an address of 607 W. Chicago Street in Plainfield Illinois; sets forth limits on any payments made under the insurance; and describes insured as "Metal Dealers/Distributor." It also references endorsements and exclusions, stating that "Terrorist Risk Insurance Act Coverage" was declined, and listing "Broad Form Nuclear Exclusion, and as per PSA 1095 attached" as "ENDORSEMENTS ATTACHED TO THIS POLICY." PSA 1095, in turn, is a "FORMS AND ENDORSEMENTS SCHEDULE," which includes the header "ATTACHING TO AND FORMING PART OF POLICY NO. L7187228." This form lists both EAA 148 and PSA 1095 by name and number. Pl.'s Facts Ex. 5 at 20.

The Coverage Form provides that UNIC as the insurer "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. [The insurer] will have the right and duty to defend any 'suit' seeking those damages." Coverage Form ¶ 1(a). The form further states that the insurance is limited to injury or damage "caused by an 'occurrence' that takes place in the 'coverage territory" and occurs during the policy period. *Id.* ¶ 1(b).

Of the endorsements, of greatest importance is that of EAA 148 and another titled "DESIGNATED OPERATIONS COVERAGE ONLY." EAA 148 states, in relevant part, "THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY...This

---

record. *See generally* Pl.'s Reply. To the extent that the parties' Rule 56.1 challenges are nonetheless clear, they will be considered. However, it is not the duty of this Court to survey the record to make up inadequate filings.

insurance does not apply to injury or damage directly or indirectly arising out of, caused by or resulting from 'your products,' or 'your work' in connection with any single custom house or a house which is a part of a multiple tract housing or condominium or other multi-unit residential projects. Projects which are mixed use, any part residential or any part commercial, are considered to be a residential project subject to this endorsement."

The Designated Operations endorsement states:

> You, for all insureds, through your insurance broker or advisor, have submitted an application and/or written correspondence or documentation to us which has induced us to issue this restricted policy of insurance. You may have other operations, which have not been revealed to us, intentionally or not. Such exposures may be more hazardous, the same or less hazardous than that which has been set forth in such application, correspondence or documentation for this policy.

> You should read this endorsement, and the policy to which it is attached, carefully and consult with your insurance brokers and advisors as only certain, very specific operations have been covered under this policy.

> Subject to all of the exclusions, terms and conditions of this policy, such insurance as is afforded by this policy applies only to liability arising directly from the ownership, maintenance or use of the following by you or the specific business operations by you as described as follows:

> Location of Premises: Per locations shown on the Declarations Page, schedule of locations or added by endorsement.

Pl.'s Facts Ex. 5 at 35.

d.      Underlying Complaint and Current Action

In November 2005, Fasteel fabricated and delivered steel to a residential construction project located at 1854 Bosworth Lane in Northfield, Illinois ("1854 Bosworth"). Fasteel's contribution to that project was concluded on November 21, 2005 with its final steel delivery.

In July of 2006, Fasteel was served with a Summons and Third Party Complaint in a lawsuit brought by Vitto Recchia ("Recchia Complaint"). Recchia alleges that he was injured while working in the basement of 1854 Bosworth. The Amended Complaint in the lawsuit alleges liability of Fasteel based on an alleged failure to exercise reasonable care in its work on the premises. Fasteel forwarded information regarding the Recchia Complaint to UNIC, who denied coverage and returned to Fasteel a deductible that had been processed.

UNIC filed its Complaint for Declaratory Judgment November 14, 2006, seeking clarification of its obligations in the Recchia matter under Policy terms.

## 2.    SUMMARY JUDGMENT STANDARD

A party seeking summary judgment has the burden of showing, through "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact that would prevent judgment as a matter of law. Fed. R. Civ. P. 56(c). On a motion for summary judgment, courts "must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party." *Allen v. Cedar Real Estate Group, LLP*, 236 F.3d 374, 380 (7th Cir. 2001).

Even so, the nonmoving party may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; rather, he or she must go beyond the pleadings and support contentions with proper documentary evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The successful non-movant must do more than raise a "metaphysical doubt" as to the material facts, *see Wolf v. Northwest Ind. Symphony Soc'y*, 250 F.3d 1136, 1141 (7th Cir. 2001) (citation and quotation omitted), and instead must present definite, competent evidence to

rebut the motion, *see Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001); Fed. R. Civ. P. 56(c).

Rule 56(c) mandates the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. A non-moving party who bears the burden of proof on an issue must demonstrate by specific factual allegations that there is a genuine issue of material fact in dispute. *McMillian v. Svetanoff*, 878 F.2d 186, 188 (7th Cir. 1989). This evidence provided by the non-movant must be sufficient to enable a reasonable jury to find in his or her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

Mere allegations in the pleadings, unsupported by record evidence, cannot create an issue of fact defeating summary judgment. *Burrell v. City of Mattoon*, 378 F.3d 642 (7th Cir. 2004). The Seventh Circuit has made it clear that "self-serving affidavits, without any factual support in the record, are insufficient to defeat a motion for summary judgment." *Palmer v. Marion County*, 327 F.3d 588 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990) as stating that "[t]he object of [Rule 56(e) ] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."). However, rebuttal can come from the allegations of a complaint, but only to the extent that they are based upon the plaintiff's personal experience. *See Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (requiring that allegations are admissible at summary judgment under 56(e) so long as they are "based on personal knowledge and [set] forth specific facts

showing that there is a genuine issue for trial"). The fact that those statements may be "self-serving" is not a valid grounds for deeming them inadmissible. *See id.*

Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986).

**3.     ANALYSIS**

This Court must interpret a contract for commercial general liability insurance, namely, the coverage provided by Policy L7187228 at the time of the accident in November of 2005. In particular, interpretation will focus on the Residential Projects Exclusion and the Designated Operations Endorsement. This Court must consider the fact that document EAA 148 was never signed by the Defendant – as expressly required – and a disagreement between the parties ever agreed to the exclusion. The Designated Operations Endorsement must also be considered in light of its effect on coverage for the accident in question.

        a.     Party Positions

Plaintiff maintains that the Recchia claim and the events it describes are not covered by the Policy. Plaintiff argues that the exclusion was an underwriting requirement or previously understood term, and that the required signature was rendered unnecessary in light of the Policy as a whole and the understanding between the parties. According to Plaintiff, the Policy should be enforced in its entirety with the Residential Projects Exclusion included. To the extent that Fasteel's refusal to sign represents a rejection of this exclusion, Plaintiff asserts that there was no meeting of the minds between the parties and the Policy was therefore invalidated. Plaintiff also argues that the Designated Operations Endorsement provides another basis for avoiding

coverage, as the actions taken by Fasteel and described in the Recchia complaint move beyond the business practices covered by the Policy.

Defendant Fasteel maintains that the Residential Projects Exclusion was never discussed or revealed prior to the delivery of Policy documents in December of 2005 or early January of 2006. The Defendant maintains that this exclusion was never part of the agreement between the parties, and that the lack of signature reflects the true understanding of the Policy between the Parties and allows for coverage without the Residential Projects Exclusion. In the alternative, Fasteel argues that the exclusion does not apply to the facts at hand. With respect to the Designated Operations Endorsement, Defendant argues that other contractual terms make clear that Recchia's claims were covered under the Policy.

        b.    <u>Relevant Law</u>

The Declaratory Judgment Act authorizes a federal court, "[i]n a case of actual controversy within its jurisdiction," to "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201. This approach requires that there be a basis for asserting Federal jurisdiction, but it is undisputed that such a basis exists pursuant to 28 U.S.C. § 1332. The Act also requires that there be an actual "controversy." *See Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 96, 113 S.Ct. 1967, 124 L.Ed.2d 1 (1993). However, this requirement is also satisfied, as a complaint arguably triggering the Policy has already been filed. *See Sonoco Bldgs., Inc. v. Am. Home Assur.*, 877 F.2d 1350, 1355-56 (7th Cir. 1989) (discussing the fact that the duty to defend is triggered "even if there is doubt as to whether the insurance policy covers the matter at issue"). Therefore, as an initial matter, this Court finds that Plaintiff's complaint for declaratory judgment is properly before it.

Generally, the rules of contract interpretation apply when considering the terms of an insurance policy. *See Nat'l Fid. Life Ins. Co. v. Karaganis*, 811 F.2d 357, 361-63 (7th Cir. 1987). Construction of an insurance policy is a question of law to be determined by this Court, with the purpose of ascertaining and effectuating the intent of the parties through interpretation of the policy as a whole. *Vanek v. Illinois Farmers Ins. Co.*, 268 Ill.App.3d 731, 735, 205 Ill.Dec. 863, 867,644 N.E.2d 419, 423 (1994); *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill.2d 90, 108, 607 N.E.2d 1204, 1212 (1992). Ambiguity is the only relevant bar to direct application and enforcement of language found in an insurance policy:

> Under Illinois law, an insurance policy that contains no ambiguity is to be construed according to the plain and ordinary meaning of its terms, just as would any other contract. However, if a provision of an insurance policy is ambiguous, the provision must be construed in favor of the insured. A term is ambiguous if it is subject to more than one reasonable interpretation. Ambiguous language is strictly construed against the insurance company because the insurer is the drafter of the policy. Thus, the insured's interpretation of an unclear provision must prevail in order to effectuate the predominate purpose of the contract which is to indemnify the insured.

*Karaganis*, 811 F.2d at 361 (citations and quotations omitted); *see also Outboard Marine*, 607 N.E.2d at 1212-13 (summarizing the standard). As with the determination of all other terms, ambiguities must be considered in light of the policy in its entirety. *See Shefner*, 611 N.E.2d at 628. "[C]ontracts are to be interpreted as a whole, giving meaning and effect to each provision of the contract.`" *Arrow Master, Inc. v. Unique Forming Ltd.*, 12 F.3d 709, 713 (7th Cir.1993) (quoting *Mayfair Constr. Co. v. Waveland Assoc. Phase I Ltd. P'ship*, 249 Ill.App.3d 188, 188 Ill.Dec. 780, 788, 619 N.E.2d 144, 152 (1st Dist.), appeal denied, 153 Ill.2d 561, 191 Ill.Dec. 621, 624 N.E.2d 809 (Ill.1993)).

Close questions are generally to be decided against the insurer.  As the party drafting the policy in the majority of cases, the insurer bears the burden of errors it might contain.  *Johnson v. Equitable Life Assur. Soc. of U.S.*, 275 F.2d 315, 318 (7th Cir. 1960).  In addition, under Illinois law insurance policy exclusions are to be strictly construed in favor of coverage.  *Rich v. Principal Life Ins. Co.*, 226 Ill.2d 359, 875 N.E.2d 1082 (2007) ("If the words used in the insurance policy are reasonably susceptible to more than one meaning, they are considered ambiguous and will be construed strictly against the insurer who drafted the policy.  This is especially true with respect to provisions that limit or exclude coverage.").  The insurer also bears the burden of showing that an exclusion is to be applied to the general coverage terms of the policy.  *See Sokol and Co. v. Atl. Mut. Ins. Co.*, 430 F.3d 417 (7th Cir. 2005) (citing *Conn. Specialty Ins. Co. v. Loop Paper Recycling, Inc.*, 356 Ill.App.3d 67, 291 Ill.Dec. 875, 824 N.E.2d 1125, 1130 (2005)).

c.     Status of the Policy

The parties are in agreement on the general nature of coverage; the Policy had an effective date of October 25, 2005, and its basic terms are described in a Commercial General Liability Coverage Form ("Coverage Form") and other documents attached to Plaintiff's statement of facts as Exhibit 5.  *See* Pl.'s Facts ¶ 8 (describing this document as "[a] true and correct copy of the UNIC policy"); *see also* Compl. Ex. C.[2]  This Coverage Form establishes the

---

[2]There are several discrepancies between the putative copies of the Policy attached to Plaintiff's statement of facts and the Complaint, namely, different typographical appearance, and the inclusion of the Application and Quote with one and not the other.  In addition, Fasteel apparently disputes some aspect of the version attached as Exhibit 5 to Plaintiff's facts response. *See* Def.'s Facts Resp. ¶ 8.  However, the Defendant fails to explain what is disputed about this version, and repeatedly cites favorably to its terms.  Therefore, this Court assumes that Exhibit 5 represents an accurate copy of the Policy.

generic terms of a Commercial general liability policy, and is accompanied by a Declarations

form and endorsements, which altogether represent Policy No. 7187228.[3]  However, as will be

discussed below, disputes remain regarding the propriety of enforcing EAA 148 and its

Residential Projects Exclusion along with other Policy terms.  In addressing this question,

discussion will move beyond the four corners of the Policy and into other evidence of the

parties' agreement.  It is therefore necessary to clarify several fact issues regarding the

negotiations and documentation presented in the record.

There is little relevant dispute regarding the Application and Quote for insurance drawn

up in October of 2005.[4]  For present purposes these documents are of limited relevance because

their effect on the parties post-issuance is minimal.[5]  To the extent that the Policy's accuracy as a

record of the parties' agreement is called into question, the Application and Quote are relevant to

the limited extent that, while they contain some reference to exclusions, they do not reference

---

[3]That these documents together form the Policy is supported by their interrelatedness, in
that the Coverage Form references the attached Declarations Form throughout, and the
Declarations Form in turn references the endorsements.

[4]The record is somewhat unclear with respect to the Application, in that the parties have
submitted two different versions of the document.  *Compare* Compl. Ex. C (dated October 18,
2005, citing an effective date of October 21, 2005, and labeled "quote") *with* Okal Aff., Ex. A
(UNIC 0091-94) (dated October 27, 2005, citing an effective date of that same day, and labeled
"bound").  However, this is irrelevant to the current discussion.

[5]Neither of these documents is typically sufficient to create coverage.  *See Mahon v. State
Farm Mut. Auto. Ins. Co.*, 36 Ill.App.2d 368, 184 N.E.2d 718, 724 (Ill. App. Ct. 1962)
(providing that "no valid insurance, temporary or otherwise, became effective until delivery of
the binder").  Terms found in an application can have such an effect, but this is dependent on
language contained therein.  *Pietruszynski v. Prudential Ins. Co. of Am.*, 54 Ill.App.2d 372, 203
N.E.2d 442 (Ill. App. Ct. 1964).  In this instance, the Application makes no claim to bind the
parties.  Similarly, the impact of the Quote is expressly delimited by its language, which states in
part that it "is not an insurance policy nor insurance binder," but rather "is a quote for your
information only."  *See* Okal Aff. Ex. C.

anything similar to the Residential Projects Exclusion included in the Policy documents.  *See* Okal Aff. Ex. C.

With respect to the Binder, it is undisputed that an agreement to provide interim coverage was recorded by P.S. & Associates on October 28, 2005.  This document, unlike the Application and Quote, clearly and directly addresses the Residential Projects Exclusion.  *See* Def.'s Facts, Ex. 2 at 2 (stating "Residential Projects Exclusion – requires insured's signature" in a list of "Exclusions/Amendments").  The Defendant, however, maintains that the document was never delivered, and therefore provides no indication of the parties' agreement or whether there was notice of an incorrect term in the Policy documents.  In support, Fasteel points to the affidavit of Vanessa Hernandez, which states that "Fasteel, Inc. did not receive any binder."[6]  Def.'s Add'l Facts ¶ 5.  Indeed, Plaintiff does not directly dispute the claim that the Binder was never delivered.

Instead, UNIC simply responds that the binder – not Binder – "was issued to Fasteel's insurance broker," that UNIC "has no knowledge regarding whether this broker shared the binder with his client," and that "[r]egardless of whether Fasteel read its policy, it had it, or its broker had it."  Pl.'s Add'l Facts Resp. ¶ 5.  However, Plaintiff provides no evidence in support

---

[6]There is confusion at several points as to whether the parties are referring to the "Binder" – the document purportedly creating interim coverage – or the 3-ring "binder" that seems to have contained the Policy documents.  The latter does not appear to have included the Binder, and was conveyed to Fasteel at some point – by the Defendant's account, in December 2005 or January 2006.  Fasteel refers to a "Binder" that P.S. & Associates prepared on behalf of UNIC, but then states that Fasteel "did not receive any binder."  Def.'s Add'l Facts ¶ 5.  In response, UNIC agrees that "a binder was issued including the Residential Projects Exclusion," but further states that "[t]his binder was issued to Fasteel's insurance broker."  Pl.'s Add'l Facts Resp. ¶ 5.  On a matter of some importance, this lack of clarity is surprising.  However, by looking to the Hernandez affidavit, it is clear that Fasteel acknowledges the drafting of the Binder, denies receiving the Binder, and admits receiving the binder.  Hernandez Aff. ¶ 7.

of this assertion, and instead alleges adequate delivery without providing any supporting facts, such as: the name or description of the broker; any evidence showing that the broker was operating in a representative capacity so as to put Fasteel on notice of the Binder's contents; or any indication as to when or how that delivery took place. *See Zannini v. Reliance Ins. Co. of Illinois*, 147 Ill.2d 437, 451, 168 Ill.Dec. 820, 826-27, 590 N.E.2d 457, 463-64 (1992) (citations omitted) (stating that the representative capacity of insurance intermediaries is a question of fact). This Court therefore finds that Fasteel's claim that it never received the Binder document is uncontroverted for summary judgment purposes.

The parties are in agreement that all remaining documents relevant to the Policy were incorporated into a single 3-ring binder, discussed above, which includes a Declarations page, the Coverage Form, and various endorsements. The Defendant maintains that it did not receive this collection of documents until December 2005 or January 2006.[7, 8] Plaintiff seems to contradict this. *See* Pl.'s Add'l Facts Resp. ¶ 5, 7, 11, 13. However, as with its attempts to contradict Fasteel on the delivery or non-delivery of the Binder, UNIC suggests that the Policy documents were delivered at an earlier date, yet fails to provide any evidentiary support.

---

[7]At various points, the parties have alluded to the possibility that party positions were taken in response to the accident, the suggestion being that UNIC added the Residential Projects Exclusion to avoid coverage, or that Fasteel only refused to sign the Residential Projects Exclusion once it received the Policy so as to maintain coverage. *See, e.g.*, Def.'s Resp. at 5; Pl.'s Reply at 3. Any suggestion that the other party was attempting to "game the system" in this manner is unsupported by the current record, as there is no evidence that either side was aware of the accident until after the disagreement over EAA 148 had already commenced.

[8]UNIC is generally dismissive of the weight to be afforded the Hernandez and Gonzales affidavits. *See, e.g.*, Pl.'s Facts Reply at 1. However, in light of the fact that Plaintiff has not provided documentary evidence or sworn testimony to contradict their contents, they are adequate for summary judgment purposes.

Therefore, this Court finds it uncontroverted that Fasteel did not receive documentation of the Policy until December 2005 or January 2006.

This Court therefore concludes that a factfinder could conclude that the Binder was never received by Fasteel or its broker. In addition, there is no evidence contradicting the Defendant's assertion that it did not receive, the 3-ring binder until December 2005 or January 2006. Therefore, no documents in the record indicate discussion or notification regarding the Residential Projects Exclusion prior to delivery of the 3-ring binder and the signature request that it contained.

     d.    <u>Endorsement EAA 148</u>

Though Policy text suggests that Endorsement EAA 148 is an integral part of the insurance contract, the form nonetheless lacks a required signature and is therefore not an enforceable term of the Policy.

     i.    *As drafted, Policy documents incorporate the Residential Projects Exclusion*

As drafted, it is apparent that the Policy was intended to include the Residential Projects Exclusion as a binding Policy term; the Declarations page references the endorsements listed on PSA 1095 EAA 148, which in turn lists the Residential Projects Exclusion as one of the incorporated endorsements. *See* Pl.'s Facts Ex. 5 at 2, 20.

Fasteel advances several arguments against reading the Residential Projects Exclusion into the Policy, all similarly unconvincing. The Defendant generally maintains that it sought "coverage for business operations which involved the delivery of steel to residential coverage sites." *See* Def.'s Resp. at 3. However, the subjective intent of the parties is irrelevant where contractual language is clear. *See, e.g., Empro Mfg. Co., Inc. v. Ball-Co Mfg., Inc.*, 870 F.2d

423, 425 (7th Cir.1989) ("[I]f intent were wholly subjective there would be no parol evidence rule, no contract case could be decided without a jury trial, and no one could know the effect of a commercial transaction until years after the documents were inked.... '[I]ntent' in contract law is objective rather than subjective...."). Also unavailing is the Defendant's argument that the absence of the Residential Projects Exclusion from the Application and Quote should preclude similar but contrary language in the Policy documents; as stated above these documents have little binding effect. *See* supra at 12, n. 5. This Court also does not find compelling Fasteel's argument that EAA 148 was hidden in the documents or otherwise unclear. *See* Pl.'s Reply at 6, n. 4. Any binding insurance obligation in the record carries with it a reference to the endorsement, such as the Binder and the Declarations,[9] and a representative of Fasteel acknowledged that the endorsement was incorporated into the Policy documents.[10] *See* Def.'s Resp. at 4. Finally, Fasteel's claim that PSA1095 was never provided does not preclude enforcement of the Residential Projects Exclusion, as the insured has a duty, particularly where the missing document is conspicuous and the insured is sophisticated, to seek out documentation of its own Policy. *See Perry v. Econ. Fire & Cas. Co.*, 311 Ill. App. 3d 69, 724 N.E.2d 151 (Ill.

---

[9]In fact, the Defendant directly cites the Declarations Form, claiming that this "second page of the policy does not expressly identify any 'exclusion' other than what is stated as the 'Broad Form Nuclear Exclusion' and that the Terrorist Risk Insurance Act Coverage was declined." Def.'s Resp. at 6. However, this does not help its case, for though the Residential Projects Exclusion was not referenced by name, it was nonetheless referenced indirectly by reference to PSA1095, which itself references the pivotal endorsement. *See* Pl.'s Facts Ex. 5 at 2 (referencing "ENDORSEMENTS ATTACHED TO THIS POLICY...as per PSA1095"); id. at 20 (PSA 1095 referencing "EAA 148 (11/01) 'Residential Projects Exclusion.'").

[10]"Q: So you agree that - we can agree that the policy that was issued to Fasteel contained a - the residential projects exclusion endorsement that's attached as part of Exhibit C to United National's complaint? A: Yes." Gonzales Dep. at 58.

App. Ct. 1999) ("An insured bears the burden of knowing the contents of insurance policies.") (citing *Furtak v. Moffett*, 284 Ill.App.3d 255, 219 Ill.Dec. 660, 671 N.E.2d 827, 829 (1996)). Therefore, any suggestion that the Policy documents as drafted do not incorporate the Enforcement is not compelling.

<em>ii.      Endorsement EAA 148 invalidated for lack of required signature</em>

That said, though UNIC may have intended to incorporate the Residential Projects Exclusion through its drafting of the Policy, this Court looks to the language of the Policy in its final form, and in that context the endorsement is invalid. The Binder lists the Residential Projects Exclusion, but states that it "requires insured's signature," and EAA 148 reiterates that requirement by including a signature line at the bottom of the form. *See* Pl.'s Facts Ex. 5 at 28. Without Fasteel's signature, EAA 148 is invalidated for failure to meet this requirement. *See U. S. Fire Ins. Co. v. Schnackenberg*, 88 Ill.2d 1, 8, 429 N.E.2d 1203, 1207 (1981) (contract documents "must be given their plain and unambiguous meaning"). The importance of having Fasteel sign the endorsement is also clear from the email discussions in the record. *See supra* at 3. A required signature is just that – required – and the failure to meet this requirement should be interpreted as having some impact on the agreement between the parties. Any other outcome would fail to give "meaning and effect to each provision of the contract." *See Arrow Master*, 12 F.3d at 713.

Plaintiff alleges that "no policy providing residential projects coverage was ever offered to Fasteel by UNIC." *See* Pl.'s Reply at 4. However, the fact that the Residential Projects Exclusion contained what was essentially an "opt out" provision in its signature requirement

-17-

means that they arguably did just that. At the very least, the missing signature introduces ambiguity into the Policy that must be resolved against the insurer.

### iii. No other evidence allowing waiver of the signature requirement

Despite the foregoing, UNIC maintains that the lack of signature can be overlooked where the parties' intent to be bound under the language in question is clear. *See* Pl.'s Reply at 4-5. In support of this argument, Plaintiff attempts to distinguish or recharacterize the cases cited by the Defendant. There is some merit in these attacks, as *Andreou and Casson, Ltd. v. Liberty Ins. Underwriters, Inc.*, 377 Ill. App. 3d 352, 877 N.E.2d 770 (Ill. App. Ct. 2007) and *Great Am. Ins. Co. of New York v. Helwig*, 419 F.Supp.2d 1017 (N.D. Ill. 2006) have little to nothing to say respecting the validity of an endorsement lacking a required signature. Finally, and chiefly, Plaintiff looks to *McDaniel v. California-Western States Life Ins. Co.* for the proposition that the presence or absence of a signature provides only "additional proof that an endorsement was part of the insurance contract." Pl.'s Reply at 5. However, the *McDaniel* court's language carries little if any weight: the case involved the missing signature of an insurer rather than the insured; the court found that the lack did "not preclude [an endorsement's] inclusion and construction as a part of the insurance contract," as opposed to Plaintiff's wider claim that the lack is only "additional proof"; and the opinion is a non-binding interpretation of Texas rather than Illinois law from over half a century ago. 181 F.2d 606 (5th Cir. 1950).

Plaintiff does not advance a single citation showing that an endorsement lacking a required signature is still valid under Illinois law. *See* Pl.'s Reply at 2-6. That said, there is support for the position. *See, e.g., Vesely v. Prestige Cas. Co.*, 4 Ill.App.3d 726, 728, 281 N.E.2d 724, 725 (Ill. App. Ct. 1972) (suggesting that, where the endorsement was intended as an

inducement for insurer to take on the risk, inadequacy of the signature is irrelevant to the clause's enforceability); *Consol. Bearings Co. v. Ehret-Krohn Corp.*, 913 F.2d 1224 (7th Cir. 1990) ("The object of a signature is to show mutuality or assent, but these facts may be shown in other ways, as, for example, by acts or conduct of the parties."). However, the argument is not compelling in this case because the role of the Residential Projects Exclusion in the parties' intentions and negotiations is unclear. *See Consol. Bearings*, 913 F.2d at 1231 ("[W]hether the signing of the instrument is a condition precedent to its becoming a binding contract [however,] usually depends upon the intention of the parties.") (quoting *Lynge v. Kunstmann*, 94 Ill.App.3d 689, 694, 50 Ill.Dec. 146, 150, 418 N.E.2d 1140, 1144 (1981)).

The Defendant has repeatedly stated that it was never aware of the Residential Projects Exclusion prior to receiving the binder of documents, which argues that the clause was not agreed upon and was instead sprung upon Fasteel at the drafting stage. *See* Def.'s Resp. at 5 ("Fasteel never knew of the existence of this proposed amendment at the time it provided structural steel to the construction project in November of 2005 and Fasteel never knew of the existence of this proposed amendment until after Recchia was injured at the construction site."); Def.'s Add'l Facts ¶¶ 5, 7, 9, 11, 13. While the Defendant cannot simply avoid contractual duties by disclaiming knowledge, Plaintiff has failed to provide evidence to contradict sworn affidavits in support of the Defendant's position that the documents did not properly record the parties' agreement. Instead, UNIC has provided only unsupported assertions that the Residential Projects Exclusion played a role in the Policy's formation.

The burden is on the insurer to show that an exclusion to insurance coverage applies. The exclusionary clause "must be clear and free from doubt because any doubts as to coverage

will be resolved in favor of the insured." *Int'l Minerals & Chem. Corp. v. Liberty Mut. Ins. Co.*, 168 Ill.App.3d 361, 367, 119 Ill.Dec. 96, 522 N.E.2d 758 (1988). The lack of a signature on EAA 148 introduces significant doubt as to whether it can be enforced, and therefore the exclusion cannot be deemed enforceable as a matter of law.

> e.    Impact of EAA 148's Failure

UNIC argues that if this Court finds EAA 148 invalid, the Policy as a whole is undermined, the argument being that either the Residential Projects Exclusion's failure means that there was no meeting of the minds between the parties, or that it was an underwriting requirement without which no Policy could have been created. Neither of these attacks is supported by the record.

Plaintiff maintains that EAA 148's signing was an "underwriting requirement necessary to UNIC's agreement to issue the policy to Fasteel in the first place," the failure of which would invalidate the Policy completely. *See* Pl.'s Reply at 3. However, UNIC has provided no evidence that inclusion of the Residential Projects Exclusion was a requirement for accepting Fasteel's application. Several documents that Plaintiff does cite are unconvincing, though they all reference the exclusion in one way or another. *See* Pl.'s Reply at 3 (citing the binder document (UNIC 183-84), emails demanding the Defendant's signature on the endorsement form (UNIC 171, 175 and 240), and the cancellation of the policy for failure to sign (UNIC 162 and 243)). Of the four documents cited, three are communications related to the Policy's cancellation, and prove only that Plaintiff at some later point claimed that the signature was required. *See id.* at 4. The fourth document is the Binder, which at this stage must be viewed as

having never been received by the Defendant, and which therefore provides little evidence of what the intentions and expectations of the parties actually were.

Plaintiff's claim that the Residential Projects Exclusion was an essential component of the parties' agreement is insufficiently supported by the record. It is true that much of the binding documentation references the exclusion in some way, and that the insured is typically charged with notice of the contents of its own insurance policy. *See Schoonover v. Amer. Family Ins. Co.*, 214 Ill.App.3d 33, 43, 157 Ill.Dec. 794, 800, 572 N.E.2d 1258, 1264 (1991). However, prior to delivery of the policy documents, Fasteel had received no description of the endorsement, and was only aware of Application and Quote documentation that contained no such clause. *See Maxton v. Garegnani*, 255 Ill.App.3d 291, 298, 627 N.E.2d 723, 728 (Ill.App. 5 Dist. 1994) (relaxing insured's notice requirement where insured had no access to the policy documents). To the extent that the Defendant could be faulted for failing to seek out the undelivered documents, this failure is largely excusable based on the narrow time frame between application for and delivery of the Policy documents. When the Defendant finally was confronted with the text of the Residential Projects Exclusion, it made its disagreement with the language known. There is therefore no evidence on which to favor Plaintiff's claim that there was a failed meeting of the minds, as opposed to the Defendant's suggestion that the Policy's Residential Projects Exclusion failed to record what that meeting was.

For these reasons, this Court rejects Plaintiff's contention that the invalidity of EAA 148 necessarily invalidates the Policy as a whole.

        f.        <u>Designated Operations Endorsement</u>

Plaintiff also argues that the Designated Operations Endorsement precludes coverage for the Recchia lawsuit. According to UNIC, the Recchia action is premised on the Defendant's errors in the "erection, construction, and alteration" of 1854 Bosworth, rather than action falling within the scope of Fasteel's business according to the Policy. *See* Pl.'s Summ. J. Mot. at 4-6. Plaintiff does concede, however, that UNIC is bound to defend or indemnify Fasteel for liability arising from its products after they have been delivered: "Certainly, if Fasteel created a product or performed work at its premises and this caused a bodily injury occurring away from the premises, this would not be excluded by the designated operations endorsement since the liability would arise directly from business operations taking place at Fasteel's premises." Pl.'s Reply at 9.

It cannot be determined as a matter of law that the Recchia complaint will not implicate Fasteel's core business practices and therefore qualify it for coverage under the Policy. Recchia paints a broad picture of liability for all parties involved in construction at 1854 Bosworth, including the designer, the building owner, and the Defendant. *See generally* Pl.'s Facts Ex. 6. For the most part the language of the complaint does not distinguish between the actions of the different parties, and instead states in terms generally common to all defendants that Fasteel was negligent in that it:

    a.    ...failed to inspect and detect a dangerous and unsafe condition, to the injury of the Plaintiff;

    b.    Failed to provide the Plaintiff with a safe place within which to work;

    c.    Failed to warn the Plaintiff of the dangerous conditions then and there existing, when the Defendant knew, or in the exercise of ordinary care should have known, that said warning was necessary to prevent injury to the Plaintiff;

        d.      Failed to adequately supervise the work being done on the
                    aforesaid premises;

        e.      Failed to properly erect, install and secure support beams that were
                    safe and suitable, in that the beams in the basement came out of the
                    sockets and struck the plaintiff;

        f.      Otherwise was careless and negligent.

*Id.* ¶ 8.  The complaint does not provide sufficient information with which this Court can parse

out what actions were taken by which parties, and how those actions contributed to the accident.

The allegation that Fasteel "[o]therwise was careless and negligent," for instance, could certainly

encompass errors in the Defendant's manufacturing processes, quality control, or specifications

practices, and those errors may qualify as having been "performed...at its premises and [causing]

a bodily injury occurring away from the premises."  There simply is not enough information in

the Recchia complaint from which to assume that facts will not develop in this manner.

        g.      <u>Coverage under the Policy</u>

      Plaintiff seeks a declaratory judgment finding that "UNIC has no duty to defend or

indemnify Fasteel" for the accident that took place in November of 2005.  *See* Compl. at 5.

However, this Court finds that it would be premature to determine any questions related to

indemnification.  *See Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.*, 976 F.2d

1037, 1042 (7th Cir. 1992) ("The indemnification issue will become ripe only upon completion

of the ... litigation, for its resolution depends upon an analysis of the type of relief, if any,

ultimately obtained in [the] suit."); *Weber v. St. Paul Fire & Marine Ins. Co.*, 251 Ill.App.3d

371, 373-74, 622 N.E.2d 66, 68 (Ill. App. Ct. 1993) ("Whether or not there is a duty to

indemnify, however, does not arise until an insured becomes legally obligated to pay damages in

the underlying action.").  As for UNIC's duty to defend Fasteel in the Recchia lawsuit, this Court

"must look to the allegations of the underlying complaint[]. If the underlying complaint[] allege[s] facts within or potentially within policy coverage, the insurer is obliged to defend its insured even if the allegations are groundless, false, or fraudulent." *Northbrook Prop. & Cas. Co. v. Transp. Joint Agreement*, 194 Ill.2d 96, 98 (2000).

In an action for declaratory judgment, the burden of proof rests with the party seeking relief. *Muhammad v. Muhammad-Rahmah*, 363 Ill.App.3d 407, 414, 300 Ill.Dec. 377, 844 N.E.2d 49 (2006); *Spraying Sys. Co. v. William G. Smart Co., Inc.*, 816 F.Supp. 465 (N.D. Ill. 1993). To the extent that Plaintiff has not provided evidence supporting its interpretation of the parties' negotiations, this Court has determined that the Residential Projects Exclusion is not an enforceable component of the Policy, and the Designated Operations Endorsement does not unambiguously preclude coverage in this instance.[11] Without resort to those exclusions, the Recchia action will arguably involve "sums that the insured becomes legally obligated to pay as damages because of bodily injury." Coverage Form ¶1(a). Therefore, it cannot be said as a matter of law that the action does not fall "within or potentially within policy coverage." *Northbrook Prop.*, 194 Ill.2d at 98.

---

[11]Because this Court has already found sufficient basis for denying summary judgment, the Defendant's other arguments need not be addressed, *e.g.*, waiver or the Completed Work Product clause.

**4.      CONCLUSION**

For the foregoing reasons, Plaintiff's motion for summary judgment is DENIED.

Enter:

/s/ David H. Coar

_____

David H. Coar
United States District Judge

Dated: **March 18, 2008**